## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JUDY FILLINGER, | ) | Case No. 1:20-cv-02537 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| THIRD FEDERAL SAVINGS AND | ) | |
| LOAN ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Judy Fillinger applied for a loan with Defendant Third Federal Savings and Loan Association, which the bank denied. Initially, the bank provided one explanation, which did not ring true to Ms. Fillinger. Later, the bank's lawyer offered another. These changing stories prompted Plaintiff to file suit and allege violations of Fair Credit Reporting Act and the Equal Credit Opportunity Act. Because the federal courts have limited jurisdiction, the Court has an obligation to examine whether it has the authority to reach the merits of Ms. Fillinger's claims. Despite the denial of Ms. Fillinger's loan application, the complaint fails to allege that Plaintiff suffered any actual injury or harm as a result—even assuming the denial violates the statutes. Therefore, the Court concludes that Plaintiff lacks standing to pursue her claims, depriving the Court of jurisdiction.

## STATEMENT OF FACTS

Plaintiff Judy Fillinger applied for a loan with Defendant Third Federal Savings and Loan Association in August 2020.  (ECF No. 1, ¶ 2, PageID #1.)  On her loan application, Ms. Fillinger disclosed that she previously had a loan on which the lender foreclosed.  (*Id.*, ¶ 3, PageID #2.)  Defendant's agent, Marvella Munroe, requested additional information, including bankruptcy documentation to determine if Plaintiff's foreclosures had been discharged.  (*Id.*, ¶¶ 4 & 5.)  In response, Ms. Fillinger provided copies of dockets from three foreclosure cases in 2010, 2012, and 2014 and a bankruptcy report listing real property, a schedule of secured creditors, and a discharge from 2009.  (*Id.*, ¶ 6.)  A few days later, on September 19, 2020, Third Federal denied Ms. Fillinger's loan application.  (*Id.*, ¶ 7.)  An email from Munroe advised Plaintiff that, "[a]fter review of supporting documents for foreclosure/bankruptcy, unfortunately, the loan was denied."  (*Id.*)  Munroe also noted that Third Federal denied the loan application because Ms. Fillinger had previous loans for real estate settled for less than their full balance.  (*Id.*)

Ms. Fillinger questioned this explanation because the documents she supplied to Third Federal did not indicate that she settled any real estate debt for less than its full balance.  (*Id.*, ¶ 8.)  In particular, the 2010 foreclosure case was dismissed for failure to prosecute, and the two later cases ruled that Ms. Fillinger was not a party and had no obligation on the debt.  (*Id.*)  Pointing to her 2009 bankruptcy filing, which resulted in her dismissal from the 2012 and 2014 foreclosure actions, Ms. Fillinger promptly requested a review of the denial of her loan application.  (*Id.*, ¶ 42,

PageID #6.)  In response, Third Federal issued Ms. Fillinger a Statement of Credit Denial, Termination, or Change on a standard form, on which Defendant left unchecked the foreclosure and bankruptcy boxes and indicated that the reason for the denial was settling a real estate debt for less than its full balance.  (*Id.*, ¶ 43, PageID #6–7.)  Further, that Statement of Credit Denial, Termination, or Change specified that Third Federal based its denial "in whole or in part on information obtained from the consumer reporting agency or agencies listed below," a company called Factual Data.  (*Id.*, ¶¶ 43 & 44, PageID #7.)

Plaintiff contacted Factual Data to request a description of the transaction reported to Third Federal that supplied the basis for the denial of her loan application.  (*Id.*, ¶ 44.)  In response, Factual Data advised that its credit report did not include information that she settled a real estate debt for less than its full balance.  (*Id.*, ¶ 45.)  With this information, Plaintiff again contacted Third Federal, which responded through an attorney.  (*Id.*, ¶ 30, PageID #5.)  Defendant took the position that "Third Federal's denial of credit to Judy Fillinger was not based on a report of discharge of debt by bankruptcy beyond the ten-year limit.  Rather it was a proper underwriting decision based upon your client's own disclosure that she was a defendant in a foreclosure."  (*Id.*)

## STATEMENT OF THE CASE

Based on these allegations, Plaintiff asserts five claims under the Fair Credit Reporting Act and the Equal Credit Opportunity Act.  In Counts One and Two, alleging violations of the Fair Credit Reporting Act and the Equal Credit Opportunity

Act, respectively, Plaintiff seeks $100 in actual damages, costs, and attorney's fees. In Count Three, for alleged violations of the Equal Credit Opportunity Act, Plaintiff seeks actual damages of $20,000, punitive damages of $10,000, costs, and attorney's fees. In Counts Four and Five, alleging violations of the Fair Credit Reporting Act, Plaintiff seeks the greater of $20,000 in actual damages, or $1,000 plus punitive damages in an unspecified amount, costs, and attorney's fees. Defendant moves to dismiss each count for failure to state a claim and maintains that Plaintiff lacks standing.

## JURISDICTION

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction and ensure that it has the authority to proceed. *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted). Standing presents a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up).

As the party invoking federal jurisdiction, Plaintiff has the burden of showing that she has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At

the pleading stage, the plaintiff must allege facts satisfying each element of the standing inquiry. *Warth*, 422 U.S. at 518. In this case, Plaintiff cannot show that she suffered an injury in fact under the governing Article III principles. Therefore, the Court begins and ends its analysis there.

## I.   Injury in Fact

To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the Supreme Court explained these requirements in the context of a claim under the Fair Credit Reporting Act. A particularized injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548 (quotation omitted). In other words, the plaintiff "must allege personal injury." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Particularization is a necessary but not sufficient requirement for standing. *Id.* An injury must also be concrete, which means it must actually exist. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury is real and not abstract, but not necessarily tangible. *Id.* (citations omitted).

Applying these principles to the claims under the Fair Credit Reporting Act at issue there, the Supreme Court determined that a plaintiff alleging a violation of the statute "cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. In doing so, the Supreme Court explained that a technical or

procedural violation may not run afoul of the statutory purpose of ensuring fair and accurate credit reporting and curbing the dissemination of false information, some of which may not work concrete harm in any event. *Id.* Therefore, a statutory violation "does not automatically satisf[y]the injury-in-fact requirement." *Id.* at 1549.

Following *Spokeo*, the Sixth Circuit noted that the Supreme Court's decision cited approvingly previous decisions "recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm." *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 754 (6th Cir. 2018) (addressing alleged violations of the Fair Debt Collection Practices Act) (citations omitted). However, "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact." *Id.* at 755 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016)).

In other words, when confronting claims based on alleged procedural violations of a statute, the Court must "ask (1) whether the statutory provisions at issue were established to protect a concrete interest (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)). Put more simply, an alleged procedural violation of a statute may result in a sufficiently concrete injury to confer standing where the violation presents a real risk of harm to an interest of the plaintiff Congress sought to protect. *Lyshe v. Levy*, 854 F.3d 855, 861–62 (6th Cir. 2017); *see Huff v.*

*TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019) (determining a plaintiff suffered no "actual injury" "in the flesh-and-blood or dollars-and-cents sense of the term[,]" nor did he suffer a risk of imminent injury that was "certainly impending" based on the record).

Intangible injuries premised on statutory violations may satisfy Article III's injury-in-fact requirement. *Huff*, 923 F.3d at 464. But such a claim still requires a concrete injury. *Id.* at 465 (quoting *Spokeo*, 136 S. Ct. 1549) (citations omitted). Although policing the border between claims alleging statutory violations for which a plaintiff has standing and those not alleging concrete harm may prove difficult at times, standing principles require that the alleged violation cause adverse consequences. *Id.*

## II. Analysis

Plaintiff alleges violations of the Fair Credit Reporting Act and the Equal Credit Opportunity Act. On the facts as stated in the complaint, these statutes protect procedural rights. With respect to the former, the Act protects Ms. Fillinger's access to fair and accurate credit reporting and curbing the dissemination of false information. Taking the allegations of the complaint as true, Plaintiff fails to allege a concrete injury resulting from any false or inaccurate information in her credit report or the information on which Third Federal based its denial of her loan.

That is, even assuming Third Federal based its credit decision on inaccurate or pretextual information, on the facts alleged that interest constitutes a procedural right, but fails to allege a personal and concrete injury. Although Ms. Fillinger claims

7

actual damages in certain counts, the complaint fails to identify what these are or might be or how, if at all, they might arise from or relate to any violation of the Fair Credit Reporting Act.  In other words, the complaint on its face fails to provide any reason to believe Ms. Fillinger actually suffered a concrete injury as a result of Defendant's denial of her loan application, even if that denial constitutes a violation of the Fair Credit Report Act.

As for the Equal Credit Opportunity Act, the statute protects more concrete rights and interests, namely the equal opportunity to obtain loans by preventing discrimination on the basis of race, sex, religion, and other specified characteristics. 15 U.S.C. § 1691(a); *see also, e.g.*, *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016).  But the violations alleged here do not actually harm, or present a material risk of harm to, these interests the Act protects.  Indeed, the complaint does not—on its face or by inference—allege a violation of any of these interests.  Nor does Plaintiff allege adverse consequences the alleged statutory violation caused that confer standing.

## CONCLUSION

At bottom, Plaintiff does not allege that she sustained any injury in fact arising from the statutory violations she asserts.  Although Third Federal denied Ms. Fillinger's loan application, such an action alone does not violate the law.  And the complaint fails to allege that Ms. Fillinger sustained any actual harm as a result of the denial, let alone adverse consequences flowing from a statutory violation. Because Ms. Fillinger lacks standing to pursue her claims, the Court need not

consider Defendant's motion to dismiss for failure to state a claim.  Nor does the Court take up Defendant's request for judicial notice of certain documents and materials in connection with adjudicating the issue of standing.

For all these reasons, the Court **GRANTS** Defendant's motion to dismiss for lack of standing (ECF No. 13), **DISMISSES** the Complaint (ECF No. 1), cancels the case management conference scheduled for January 21, 2021, and directs the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated:  January 12, 2021

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio